In the United States District Court
For the Middle District of Florida

United States of America,  )
    Plaintiff / Respondent,  )
                    )
                    )      Case No. 8:14-CR-379-T-36TGW
                    )
v.                  )
                    )
                    )
                    )
Jesus Hernando Angulo-Mosquera,  )
    Defendant / Petitioner.  )

Motion for Compassionate Release Pursuant to §3582(c)(1)

COMES NOW, Petitioner Jesus Hernando Angulo-Mosquera, in pro-se capacity, with the instant Motion for Compassionate Release.

Petitioner understands that his pro-se motion is to be construed "liberally" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 US 89 (2007); Haines v. Kerner, 404 US 519 (1972).

Petitioner Angulo-Mosquera never intended to set foot in the United States. When the boat on which he served as the chef was found to contain Cocaine, he found himself being brought into the United States for prosecution. Despite some concerns over jurisdiction and his lack of criminal knowledge, he accepted responsibility for his decisions putting him in such a bad position.

When Mr. Angulo-Mosquera was brought to the United States for prosecution, he was a relatively able bodied crew member and chef. Subsequent to his incarceration he developed diabetes and a number of other health problems. In the decade between his arrest in August 2014 and today, a combination of poor diet, insufficient medical care, and the aging process have taken a heavy toll.

Around the middle of 2025, Mr. Angulo-Mosquera was standing in the standard 3 foot by 3 foot prison shower stall when he stubbed his toe, resulting in a small cut. He promptly washed the cut with soap and water, and bleeding stopped quickly on it's own. This is something that could easily happen to anyone and should not have been a reason for alarm.

When the cut was red and irritated the following day, triple antibiotic ointment was used OTC. Then, when there were still signs of infection such as swelling, redness, and pain, he went to Health Services sick call where he was examined and told that it would heal on it's own and there was no cause for alarm. At this juncture, an antibiotic could have addressed the infection and the horror show of events to follow would not have followed.

Within a few days, Mr. Angulo-Mosquera could tell that there was an obvious infection and that it was spreading. He went back to Health Services and demanded treatment. He was sent to an outside specialist who indicated that indeed there was an infection, but that it was something the prison medical staff was capable of addressing. He was returned to the facility with the expectation that medical staff would prescribe antibiotics. Despite the outside specialist's indication of need, the Fort Dix health services staff neglected to prescribe antibiotics.

When Mr. Angul-Mosquera returned to sick call yet again, begging for help, staff finally realized that there was a big problem. He was taken to the emergency room. but the uncontrolled infection had spread and the decision was made that his toe would need to be amputated.

Poor post-amputation after care, and lack of proper antibiotic management, resulted in return trips, the first amputating the entire foot, then the entire leg below the knee.

Admittedly. those with diabetes do suffer more frequent complications from infections and surgical procedures. However, the Petitioner did not have Diabetes when brought into the United States for prosecution. Further, with a Diabetes diagnosis, medical staff had a heigntened duty of care when responding to things like the initial infection of the prisoner's stubbed toe.

Of most concern is that the prison staff try their best to minimize their failures and place blame upon the prisoner's actions or medical conditions. But, the simple fact is that Mr. Angulo-Mosquera came to prison a healthy man walking under his own power. The complete failure of medical staff to manage a small infected cut on a stubbed toe resulted in a below the knee amputation. It is a valid concern that Petitioner fears he may not live to see the end of his sentence. He is now disabled, and confined to a wheelchair.

Petitioner Angulo-Mosquera finds it impossible to provide the necessary self care in prison. Medical staff faults him for not properly changing bandages and missing appointments, yet takes no common sense approach in trying to achieve a solution.

First, Mr. Angulo-Mosquera speaks no english, and has no higher education. He lacks an understanding of many instructions and explanations that are provided either in a rush or in a language he cannot understand. Second, he is not physically capable of some of the assigned tasks, and the only assistance is at the Health Services office. It should not be forgotten that FCI Fort Dix is the largest Federal Prison compound. It is a former barracks on a Joint Base MDL in New Jersey, and there are city blocks of distance between the Petitioner's housing unit and Health Services. He often lacks the ability to move himself such a distance, and has no assistance from staff in getting there.

Although Petitioner is not attacking cruel and unusual punishment, please meditate for a moment on the utter failures of our system. A healthy man made a bad decision, for that decision, he was plucked out of the high seas and ushered into a Country he never intended to so much as visit in order to be prosecuted. He is then sentented to decades in prison in a foreign Country where he knows nobody and has no family or support system. His care there results in Diabetes. Medical care is so poor that a stubbed toe results in the amputation of his entire leg leaving him disabled and in a wheelchair fearing every day that the next minor injury will result in his demise. Will a nick shaving be a fatal injury in this environment?

Petitioner doesn't want to cause any trouble, he isn't seeking compensation, he simply wants to be allowed to go home to his family so that he may live out what remainder of his life he has in peace. He is certainly no longer a risk to the public. He will never again be able to board a boat, let alone be a crew member on one. And the experience has been a successful deterrent -- he will certainly never break any laws that could result in further incarceration that he

wouldn't likely survive. Not to mention, he has learned and matured and is no longer the same man that was sentenced by this Court all those years ago.

Despite having an incredibly difficult time in prison, the Petitioner has taken every opportunity to better himself. He has participated in programming and treatment, and is a true story of successful rehabilitation even before his life altering experience of being rendered disabled.

Petitioner has a wife and seven children at home in Colombia. He wishes nothing more than to return to his family as a new man. He may be disabled physically, but has matured and become wiser. He wishes to be a positive and law abiding member of his family and community so that he may live out the remainder of his life quietly and peacefully at home. He does not want to die in a foreign country away from all his family and loved ones.

Of note, this Court recently reduced the Petitioner's sentence from 235 months to 188 months based on USSG Amendment 821. Were the Court to grant an immediate compassionate release, it would only represent a reduction of about a year off a sentence of more than 15 years.

Petitioner's current 188 month sentence began on 8/29/2014. He will receive 54 days per year in Good Conduct Time, and is eligible for a year of FSA Federal Time Credits. This means that ultimately, his sentence will be approximately 149 months. He has served approximately 132 months, meaning he is requesting that this Honorable Court, in it's compassion -- based on Petitioner's disabilities, amputations, and self care troubles -- GRANT immediate release representing a reduction in sentence of approximately 17 months.

The Petitioner is over 60 years old; has serious medical conditions (diabetes and the permanent disability subsequent to the amputation of his leg); and he as served over 10 years in prison (with approximately 17 months remaining on a 188 month sentence).    Petitioner has serious medical concerns that cannot be managed properly in a correctional setting and that hinder self care in a correctional environment.    The petitioner is unable to care for himself because he has lost his leg and is now permanently disabled due to the lack of proper care.    He easily meets the standard for a Medical based compassionate release.    Petitioner has a legitimate fear of death from lack of care in prison.    Questioning survival and loosing one's ability to walk goes well beyond a punitive sentence.

Alone or in combination, these factors are extraordinary and compelling circumstances that permit this Court to grant the requested relief.    Despite these challenges, Petitioner continues to strengthen his moral compass and is an active member of his congregation.    He stays out of trouble and participates in all the programming and activities that he is capable of participating in.    Jesus and his family ask you to do help return him home to his loved ones.

Petitioner wishes to live out the remainder of his golden years quietly and peacefully, so that he may be surrounded by family and friends.    He fears dying in prison in a foreign country with nobody around.    Each day this takes a toll, and he longs to see his family again before he leaves this world    He is a changed man and would never, even were it physically possible, commit any further crimes.    He looks forward to living a law abiding and peaceful life at home with his wife who will care for his medical needs.

"People Change.    Or perhaps it is more apt to say that people are changed by

their circumstances." United States v. May. 2024 US DIST LEXIS 230074 (6th Cir. 2024). "It has been uniform and constant in the Federal Judicial tradition for the sentencing Judge to consider every convicted person as an individual and every case a unique study in the human failings that sometimes mitigate .   . the punishment to ensue." Osborn v. Shillinger, 861 F.2d 612. 625 (10th Cir. 1998).

Thank you for your consideration.

Exhaustion:

A Prisoner may proceed with filing after "he has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." _____ In the instant matter, the latter is true, and the Petitioner avers under the penalty of perjury that at least 30 days have elapsed from the receipt of his request by the Warden of FCI Fort Dix.

Compassionate Release Standards:

As the Court is aware, in order to succeed on his request for Compassionate Release, the Petitioner must satisfy three requirements. 1) he must show extraordinary and compelling reasons warrant his compassionate release or reduction in sentence; 2) he must demonstrate that the requested relief is not inconsistent with any applicable policy statements; and 3) the requested reduction must be supported by the §3553(a) factors and he cannot be a danger to any person or to the community.

In order to be eligible for a reduction in sentence based on advanced age, USSG § 1B1.13 states that a defendant is eligible at the age of 60 if he has serious medical conditions and has served at least 10 years of his sentence.

In order to be eligible for a reduction in sentence based on Medical issues, those serious medical issues must hinder self care in a correctional environment, or be difficult or impossible for the institution to provide medical care for.

§3553(a) Factors:

In order to grant Petitioner's Motion. the Court must be satisfied that such an action is consistent with and supported by the factors listed in § 3553(a). Furthermore, the decision must be consistent with applicable policy statements, and must not put the community nor any person at risk of harm. The factors to be considered are -

1. Nature and Circumstances of the Offense

2. Defendant's History and Characteristics

3. Sentencing Goals that -

    a) Reflect the seriousness of the offense;

    b) Promote respect for the law;

    c) Provide just punishment;

    d) Afford adequate deterrence to criminal conduct (general & specific);

    e) Protect the public from further crimes of the Defendant.

4 Assurance that the sentence is sufficient but not greater than necessary.

Here. the requested relief is not inconsistent with any applicable policy statements, or no such statements exist. Further, it has been demonstrated that the current sentence is in fact greater than necessary to serve the goals of sentencing   We will review each factor in turn -

1) Nature and Circumstances of the Offense

While this was a serious offense. the Petitioner was not directly involved

in the criminal activity. He was a crew member - the chef -- on a boat that was found to be smuggling cocaine. The boat was not a US boat nor headed for the US. The crime had no connection to the US except that the US decided it would prosecute those reported to be found in international waters. He is now permanently disabled and could no longer board a boat let alone serve as a crew member.

2. Defendant's History and Characteristics

The Petitioner made a poor decision in taking a job as a crew member on a boat that seemed suspicious. He has paid dearly for this choice. He has been plucked out of the sea, taken to a foreign country (the United States) and thrown in prison for 20 years because the people he worked for had cocaine on their boat. There is no indication that he intended to commit a crime and no reason to believe he would commit a crime again even if he were able. But, while imprisoned in a foreign country away from all of his family and friends, an untreated stubbed toe infection resulted in the removal of his leg and his permanent disability.

3. Sentencing Goals

The sentencing goals have been met by his lengthy amount of time already served. and the conditions in which he has served that time. He has been isolated in a foreign country away from his entire support system  as he aged and his health deteriorated without proper medical care. They took away his leg and left him permanently disabled. This is enough to deter just about anyone from commiting crimes that could result in such a harsh punishment. It is beyond just punishment, and it certainly is a serious punishment commensurate or in excess of the seriousness of the crime. When it comes to protection of the public, if rehabilitation wasn't sufficient. the Bureau of Prisons has rendered the Petitioner disabled which prevents him from further crimes.

4. Sufficient But Not Greater Than Necessary

The amount of time already served has met the goals of sentencing. A continued sentence is greater than necessary and a compassionate release is warranted in this case.

WHEREFORE, Petitioner respectfully prays that this Honorable Court GRANT his Motion for Compassionate Release and ORDER his immediate release or GRANT a reduction in sentence as deemed appropriate; or any other relief appropriate and necessary.

Respectfully,

DATE

Jesus Hernando Angulo-Mosquera
Reg. No. 61242-018
FCI Fort Dix
PO Box 2000
Joint Base MDL, NJ  08640