UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                            Case No. 8:14-cr-379-CEH-TGW

JESUS HERNANDEO ANGULO MOSQUERA

**UNITED STATES' RESPONSE IN OPPOSITION TO
ANGULO MOSQUERA'S MOTION FOR COMPASSIONATE RELEASE**

The United States opposes Jesus Hernandeo Angulo Mosquera's motion for compassionate release. *See* Doc. 707. Angulo Mosquera's medical conditions do not rise to the level of extraordinary and compelling reasons to warrant compassionate release, and, in any event, regardless of his health status, the 18 U.S.C. § 3553(a) factors do not support his early release from incarceration.

I.      **Background**

     **A. Offense Conduct**

In February 2014, Angulo Mosquera participated in a transoceanic drug-smuggling venture involving approximately 700 kilograms of cocaine. Doc. 445 ¶ 13. Angulo Mosquera was a crewman aboard the *Motor Vessel Hope II*, a 165-foot cargo freighter carrying 700 kilograms of cocaine hidden within its hull, sailing north from Panama toward the United States. *Id.* Undeterred by this initial venture, in August 2014, he again served as a crewman aboard the *Motor Vessel Hope II*, and this time, it carried an even larger load—1,492 kilograms of cocaine—again sailing north from Panama toward the United States. *Id.* ¶ 12.

1

On August 28, 2014, a maritime patrol aircraft detected the *Motor Vessel Hope II* approximately 33 miles north of Punta Cuango, Panama, in a well-known sea corridor used for drug trafficking. *Id.* ¶ 9. The United States Coast Guard Cutter *Legare* dispatched a boarding team, which conducted a right-of-approach boarding of the *Motor Vessel Hope II. Id.* ¶ 10. The boarding team encountered eight crew members, including Angulo Mosquera. A subsequent search revealed an aggregate 1,422 kilograms of cocaine hidden in the vessel's fuel tank and beneath a deck plate in the aft steering compartment. *Id.* ¶ 12. The estimated wholesale value of the cocaine was approximately $42 million. *Id.*

Based on this conduct, Angulo Mosquera was charged with conspiring to possess with the intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the United States, and possession with the intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the United States. Doc. 10. A jury found him guilty as charged. Doc. 372.

In January 2016, this Court sentenced Angulo Mosquera to serve 235 months' imprisonment. Doc. 456. Earlier this year, this Court granted Angulo Mosquera's request for a retroactive sentence reduction under 18 U.S.C. § 3582(c)(2) and Amendment 821, reducing his sentence to 188 months' imprisonment. Docs. 675, 704. Angulo Mosquera is currently incarcerated at FCI Fort Dix, is 64 years old, and is projected to be released on January 4, 2027. *See* BOP Inmate Locator at https://www.bop.gov/inmateloc/ (last accessed on January 20, 2026).

Angulo Mosquera is now seeking compassionate release following a series of medical complications stemming from a toe injury and his diabetes—ultimately leading to the partial loss of a limb. Angulo Mosquera, however, fails to mention his long history of noncompliance with BOP and emergency room medical directives, post-amputation wound care, and diabetes treatment, all of which contributed to his medical complications. For the reasons explained below, this Court should not grant him relief.

**B. Medical History**

On March 18, 2025, weeks before he injured his toe, Angulo Mosquera visited a BOP physician for a follow-up appointment regarding his "uncontrolled diabetes." Doc. 707-1 at 139. During this visit, the physician noted Angulo Mosquera's noncompliance with semaglutide injections and counseled him on the risks of uncontrolled diabetes. *Id.* In early April 2025, Angulo Mosquera cut his right toe while in the shower. *Id.* at 129, 155.

His toe became infected. Doc. 707-1 at 121. The BOP promptly fulfilled antibiotic prescriptions from his initial emergency room visit. *Id.* at 183. Medical staff provided Angulo Mosquera with antibiotic pills and later administered intravenous antibiotics to treat a diabetes-related infection of his foot. *Id.* at 72, 183, 184. He did not report the worsening condition of his toe to medical staff until April 7, 2025. *Id.* at 129.

That same day, Angulo Mosquera was admitted to the Fort Dix Emergency Room after BOP medical staff discovered he had passed out. Doc. 707-1 at 137.

3

Angulo Mosquera claimed that he had passed out because he was hungry. *Id.* He

also reported the worsening condition of his great right toe, including discoloration

and skin breakdown, which he had noticed four to six days prior after stubbing that

toe on a wall. *Id.* at 129, 137, 155. He reported no pain, drainage, or fever. *Id.* To

treat the injured toe, emergency room staff prescribed antibiotics. *See* Exhibit A[1]

(Angulo Mosquera Record of Prescriptions) at 1. The BOP medical staff fulfilled this

prescription two days later, on April 9, 2025, providing him with two antibiotics: (1)

ceftriaxone, a daily 10-gram intramuscular injection of for ten days, and (2)

sulfamethoxazole pills to be taken twice daily for ten days:

**ASSESSMENTS:**
Open wound of toe(s) with damage to nail, S91209S - Current

**New Medication Orders:**

| Rx# | Medication | Order Date |
|---|---|---|
| | cefTRIAXone Inj | 04/09/2025 10:58 |
| | **Prescriber Order:**  1 gm Intramuscularly  -  daily x 10 day(s) Pill Line Only | |
| | Indication:  Local infection of the skin and subcutaneous tissue, unsp, Open wound of toe(s) with damage to nail | |
| | Sulfamethoxazole/Trimeth DS 800-160 Mg Tablet | 04/09/2025 10:58 |
| | **Prescriber Order:**  800 mg -160 mg Orally  -  Two Times a Day x 10 day(s) -- Three days' supply given from here | |
| | Indication:  Open wound of toe(s) with damage to nail | |
| | Empagliflozin Oral Tablet | 04/09/2025 10:58 |
| | **Prescriber Order:**  25 mg  Orally  -  daily x 180 day(s) | |
| | Indication:  Type 2 diabetes mellitus | |

Exhibit A (Angulo Mosquera Record of Prescriptions) at 1.

On April 10, 2025, Angulo Mosquera returned to the emergency room for

wound care of his toe. Doc. 707-1 at 128. The administrative treatment note again

---

[1] The undersigned has requested to file Exhibit A to this response under seal. *See* Doc. 714.

recorded his noncompliance with diabetes management, including failure to take insulin. *Id*. Angulo Mosquera provided no reason for his noncompliance. *Id*. The medical staff counseled Angulo Mosquera on proper diabetes treatment and warned that noncompliance with his diabetes treatment could lead to the spread of the infection. *Id.* The BOP medical staff's admonishment proved to be prescient—Angulo Mosquera returned two weeks later when the infection worsened:

| Inmate Name: | ANGULO MOSQUERA, JESUS HERNANDO | | | Reg #: | 61242-018 |
|---|---|---|---|---|---|
| Date of Birth: | 07/31/1961 | Sex: M | Race: WHITE | Facility: | FTD |
| Note Date: | 04/10/2025 12:43 | Provider: | Padula, Jamie RN | Unit: | O03 |

**Reviewed Health Status:**   Yes
Admin Note - General Administrative Note encounter performed at Health Services.
**Administrative Notes:**

ADMINISTRATIVE NOTE   1          Provider:  Padula, Jamie RN

IM ambulated to west HSU with steady gait for daily wound care of his Right great. He is evaluated with PCPT.

His medication record on BEMR is reviewed - he has not been taking insulin, which he admits; he has no specific reason for his non-compliance; he is provided with a new Glucometer, which he has lost; he is taught how to use it; he agrees to bring ACCU check record as directed; he is being given diabetic counseling; he is being encouraged to remain compliant with treatment. He is being apprised of the risks of uncontrolled diabetes such as spread of infection etc.

Examination: right great toe: blackish/blue discoloration, skin breakdown, no drainage, dorsalis pedes palpable, tenderness, sensations intact

Doc. 707-1 at 128.

On April 24, 2025, Angulo Mosquera was diagnosed with a diabetic foot infection and a diabetic ulcer on the great toe of his right foot. *Id*. at 152. He underwent the amputation of the great right toe under Dr. Jolliffee at RWJBarnabas Health Emergency Department. *Id* at 44. Following his discharge on April 30, 2025, he was prescribed oral antibiotics (Augmentin) and instructed to take one pill every 12 hours for five days:

MEDICATIONS: Verified by nurse, reviewed by me on this visit.
Current Outpatient Medications on File Prior to Encounter:
• acetaminophen (TylenoL) 325 mg tablet, Take 2 tablets (650 mg total) by mouth every 4 (four) hours if needed for mild pain (1-3), headaches or temp > 100.4 F (38 C) for up to 10 days.
• amLODIPine (Norvasc) 5 mg tablet, Take 1 tablet (5 mg total) by mouth 1 (one) time each day.
• amoxicillin-pot clavulanate (Augmentin) 875-125 mg tablet, Take 1 tablet by mouth every 12 (twelve) hours for 5 days.
• atorvastatin (Lipitor) 40 mg tablet, Take 1.5 tablets (60 mg total) by mouth 1 (one) time each day.
• empagliflozin (Jardiance) 10 mg, Take by mouth.
• insulin NPH, Isophane, (HumuLIN N,NovoLIN N) 100 unit/mL VIAL injection, Inject 15 Units under the skin 2 (two) times a day before meals.
• lisinopril (Prinivil, Zestril) 40 mg tablet, Take 1 tablet (40 mg total) by mouth 1 (one) time each day.

*Id.* at 45. Angulo Mosquera was also administered intravenous antibiotics during his hospital stay. *Id.* at 76.

On May 5, 2025, Angulo Mosquera was readmitted to the emergency room and was found to have gangrene in multiple toes of his right foot as well as a diabetic foot infection. *Id.* at 58, 76. Angulo Mosquera underwent a below-the-knee amputation of his right leg on May 24, 2025. *Id.* at 37.

Even post-amputation, Angulo Mosquera continued his pattern of non-compliance with hospital directives. *Id.* at 146, 175. On July 7, 2025, BOP medical staff evaluated him for amputation wound care. *Id.* The BOP nursing staff noted that Angulo Mosquera was noncompliant with his daily dressing changes and follow-up visits. *Id.* During this time, Angulo Mosquera was treated with both oral intravenous antibiotics. *Id.* at 24. Defendant received treatment from the BOP on an almost daily basis post-operation, for wound care, dressing changes, renewal of his medications, and consultation with his physicians, nurses, wound care specialist, vascular surgeon, podiatrist, and physical therapist. *Id* at 16, 25, 26, 44, 50, 76, 78, 128, 145, 148. Indeed, after consulting with BOP Health Services, a Senior Attorney

6

at the BOP's Consolidated Legal Center has affirmed in writing to the undersigned
that the BOP is providing appropriate care for Angulo Mosquera's health conditions,
including his below-the-knee amputation, and will continue to adequately care for
him.

## II.    Memorandum of law

A district court has no inherent authority to modify a sentence; it may do so
"only when authorized by a statute or rule." *United States v. Puentes*, 803 F.3d 597,
606 (11th Cir. 2015). One of those statutes is 18 U.S.C. § 3582(c)(1)(A), which
permits a court to reduce a term of imprisonment if the court determines that (1)
"extraordinary and compelling reasons warrant such a reduction," (2) "such a
reduction is consistent with applicable policy statements issued by the Sentencing
Commission," and (3) the § 3553(a) sentencing factors weigh in favor of a reduction.
*Id.*; *see also United States v. Tinker*, 14 F.4th 1234, 1237 (11th Cir. 2021).

The Sentencing Commission's applicable policy statement, set forth in USSG
§1B1.13, defines "extraordinary and compelling reasons" for purposes of section
3582(c)(1)(A), and it is binding on the courts. *United States v. Bryant*, 996 F.3d 1243,
1262 (11th Cir. 2021). Under section 1B1.13, a defendant's medical circumstances
may qualify as "extraordinary and compelling reasons" for a sentence reduction
USSG §1B1.13(b)(1).

Specifically, section 1B1.13(b)(1) permits a reduction of a defendant's sentence
based on his medical condition when:

(A) The defendant is suffering from a terminal illness (*i.e.*, a serious and

7

advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B) The defendant is—

**(i) suffering from a serious physical or medical condition,**

(ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process,

**that substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he or she is not expected to recover.**

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

USSG §1B1.13(b)(1)(A)–(C) (emphasis added).

Even if the court finds that an extraordinary and compelling reason exists, it still may not reduce the defendant's term of imprisonment under section 3582(c)(1)(A) unless it also finds that the defendant's release would not endanger the community and that the factors listed in 18 U.S.C. § 3553(a) favor compassionate release. *Tinker*, 14 F.4th at 1237. If the defendant fails to establish any of the three requirements, the court need not analyze the other requirements and cannot grant relief. *See United States v. Giron*, 15 F.4th 1343, 1348 (11th Cir. 2021). The defendant, as movant, bears the burden of establishing entitlement to relief under section 3582. *See United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014) (addressing a motion

8

for reduction of sentence under 18 U.S.C. § 3582(c)(2))[2].

### A.    Angulo Mosquera's medical circumstances are not extraordinary or compelling to warrant compassionate release.

Angulo Mosquera argues that this diabetic foot infection, the resulting below-the-knee amputation, and related post-surgical complications constitute extraordinary and compelling reasons warrant early release from prison. Doc. 707 at 2–3. He further alleges that BOP medical staff were negligent by failing to prescribe antibiotics prior to the amputation and in their post-amputation wound care and antibiotic management. *Id.* at 2. His medical records, however, tell a different story, one that is punctuated by Angulo Mosquera's failure to follow medical directives, including failure to adhere to diabetes management protocols and basic wound-care instructions—conduct that materially contributed to the progression of his condition. *See Supra* at Section B (Medical History).

Angulo Mosquera requests a sentence reduction based on two asserted medical circumstances, to wit: (1) diabetes; and (2) a below-the-knee amputation of his right leg. Doc. 707 at 6. But Congress and the Sentencing Commission have made clear that compassionate release based on medical conditions are available only under very limited circumstances. *See United States v. Colbert*, 2022 WL 2230681,

---

[2]A defendant must fully exhaust all administrative remedies before seeking judicial relief. *See United States v. Harris*, 989 F.3d 908, 909–10 (11th Cir. 2021). The United States concedes that Angulo Mosquera has fulfilled this exhaustion requirement within the BOP. On July 6, 2025, Angulo Mosquera sent a note to the Warden requesting assistance filing a compassionate release motion. Doc. 707-1 at 1. More than 30 days passed from the BOP's receipt of Angulo Mosquera original application before he filed his motion in this Court, so this Court may consider the merits of Angulo Mosquera's motion.

at *3 (W.D. Ky. June 21, 2022) (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 578 (M.D.N.C. 2019). Those circumstances are narrowly defined in USSG §1B1.13(b)(1)(A)–(D), and Angulo Mosquera bears the burden of demonstrating that he falls within them. *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014) (addressing a motion for reduction of sentence under 18 U.S.C. § 3582(c)(2)). He does not.

Nothing in the record suggests that Angulo Mosquera diabetes or post amputation, whether considered individually or in combination, is terminal, substantially diminishes his ability to provide self-care within FCI Fort Dix, or cannot be adequately treated by BOP medical providers. *See* USSG §1B1.13(b)(1). To the contrary, BOP medical staff have affirmatively stated that Angulo Mosquera's medical conditions are fully treatable within the BOP. Moreover, Angulo Mosquera has submitted no medical documentation demonstrating that his conditions make him unable to provide self-care—a prerequisite for relief under the guidelines. *See id.*; *see also United States v. Rey-Durier*, 2020 WL 4349941, at *2 (M.D. Fla. July 29, 2020) (denying motion for compassionate release where movant did "not provide any medical documentation that supports his assertion or a finding that the conditions make him unable to provide self-care").

Indeed, the medical records indicate that Angulo Mosquera's condition has stabilized and improved following surgery, that he receives frequent—often daily—medical attention, and that the BOP continues to provide comprehensive treatment and monitoring. Doc 707-1 at 16, 25, 26, 44, 50, 76, 78, 128, 145, 148. For all these

reasons, Angulo Mosquera's medical circumstances, while serious, fall short of the extraordinary and compelling threshold required to justify compassionate release.

### C. The 18 U.S.C. § 3553(a) factors[3] disfavor Angulo Mosquera's release.

Finally, even if Angulo Mosquera could establish extraordinary and compelling reasons for relief—which he cannot—this Court should still deny a sentence reduction because the section 3553(a) sentencing factors weigh against release. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Tinker*, 14 F.4th 1234, 1237 (11th Cir. 2021).

Angulo Mosquera was convicted after trial for his role in two large-scale maritime cocaine-smuggling operations involving an aggregate amount 2,192 kilograms of cocaine aboard a cargo ship bound for the United States. Doc. 445 at ¶ 9, 14. These were not isolated or impulsive acts. They were sophisticated, coordinated ventures carried out on separate occasions months apart. At trial, Angulo Mosquera testified that he was unaware of the drugs aboard the vessel and introduced favorable polygraph results to bolster that claim. *See* Doc. 520 at 11. The jury, however, rejected both Angulo Mosquera's testimony and the polygraph

---

[3]The factors in section 3553(a) are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

11

evidence and convicted him. *See* Doc. 372.

The reality is that Angulo Mosquera knowingly and actively participated in both drug-smuggling ventures. Doc. 445 at ¶ 12–14. In February 2014, he hid the drugs in the vessel and participated in an at-sea offload and transfer of the drugs. Doc. 520 at 15. In August 2014, he again helped hide the cocaine, operated a crane to load the drugs, and stood ready to assist with the offload had the cargo not been interdicted by United States law enforcement. *Id.* His conduct was deliberate, repeated, and essential to the success of the trafficking operations.

Reducing Angulo Mosquera's sentence would undermine the core purposes of sentencing reflected in section 3553(a). The sheer quantity of narcotics involved, the repeated nature of the offense, and Angulo Mosquera's hands-on participation weigh heavily in favor of a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. *See* 18 U.S.C. § 3553(a)(2)(A). Early release would also fail to afford adequate deterrence to others engaged in large-scale international drug trafficking and would diminish the need to protect the public from further crimes. *See id*. § 3553(a)(2)(B)–(C).

THEREFORE, this Court should deny Angulo Mosquera's motion for compassionate release.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:                                                    
David W.A. Chee
Assistant United States Attorney
Florida Bar No. 109659
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:   (813) 274-6358

13

**United States v. Angulo Mosquera**          **Case No. 8:14-cr-379-CEH-TGW**

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2026, a true and correct copy of the

foregoing document and the notice of electronic filing were sent by United States

Mail to the following non-CM/ECF participant:

Jesus Hernandeo Angulo Mosquera
Reg. No. 61242-018
FCI Fort Dix
Federal Correctional Institution
P.O. Box 2000
Joint Base Maguire-Dix-Lakehurst, NJ 08640

David W.A. Chee
Assistant United States Attorney
Florida Bar No.: 109659
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: David.Chee@usdoj.gov

14

# EXHIBIT A

Requested to be Filed Under Seal

*See* Doc. 714